UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

TSHIOVO PITSHOU NZEMBA,

                                   Petitioner,

          -vs-

WILLIAM BARR, Attorney General of the
United States; KEVIN K. McALEENAN,
Acting Secretary, Department of
Homeland Security; THOMAS E. FEELEY,
Field Office Director for Detention
and Removal, Buffalo Field Office,
Bureau of Immigration and Customs
Enforcement; and JEFFREY SEARLS,
Facility Director, Buffalo Federal
Detention Facility,

                                   Respondents.
_____

**No. 6:19-cv-06299-MAT**

**DECISION AND ORDER**

## I.   **Introduction**

Proceeding *pro se*, Pitshou Nzemba Nzemba ("Nzemba" or "Petitioner") commenced this habeas proceeding pursuant to 28 U.S.C. § 2241 ("§ 2241") against the named Respondents (hereinafter, "the Government") challenging his continued detention in the custody of the United States Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE"). For the reasons discussed below, the request for a writ of habeas corpus is granted.

## II.  **Factual Background**

The following factual summary is drawn from the Declaration of Anthony D. Coker ("Coker Decl.") (Docket No. 4-1) and related

Exhibits (Docket No. 4-2) and the exhibits attached to the Petition (Docket No. 1).

Nzemba, a native and citizen of the Democratic Republic of the Congo ("DRC"), entered the United States at Washington-Dulles International Airport on December 9, 2017, as a non-immigrant B2 visitor for pleasure, with authorization to remain in this country for a temporary period not to exceed six months. Nzemba overstayed his visa, which expired in June 2018, and was subsequently apprehended by DHS on August 4, 2018, after trying to seek refugee status in Canada. The Canada Border Service Agency returned Nzemba to the United States after denying his claim for refugee status.

Nzemba reported to the United States Customs and Border Protection that he had filed an I-589 form (Application for Asylum and Withholding of Removal), but that agency's records search revealed no such filings. Accordingly, it was determined that Nzemba had overstayed his visa. Nzemba was served with a Notice to Appear ("NTA") on August 4, 2018, charging him with being subject to removal from the United States, pursuant to the INA § 237(a)(1)(B), as a nonimmigrant who has remained in the United States for a time longer than permitted.

After immigration proceedings were initiated, DHS performed a custody determination and decided to hold Nzemba in custody pending

a final determination of his immigration case. Nzemba requested a review of the custody determination.[1]

On September 20, 2018, an immigration judge ("IJ") adjourned Nzemba's removal proceedings until September 27, 2018, at Nzemba's request, in order to allow him additional time to obtain legal representation.

On September 27, 2018, Nzemba appeared without counsel and testified before the IJ in support of his request for a change of custody status. The IJ rendered an oral decision noting that Nzemba had no property in the United States and only one bank account with virtually a zero balance. The IJ observed that although Nzemba claimed to have family in the United States, he had no proof of these relatives such as an address where he would be living if released. Finally, the IJ noted that the Government asserted Nzemba is a flight risk because he actually was trying to leave the United States when he was apprehended, and he now claimed that he was interested in seeking asylum in Canada. The IJ found that Nzemba posed a risk of flight and accordingly denied bond.

Nzemba reserved his right to appeal the bond decision and appealed it to the Bureau of Immigration Appeals ("BIA") on October 26, 2018. Nzemba obtained representation for his appeal.

---

[1] Originally, Nzemba was held at the Clinton County Jail in Plattsburgh, New York but was transferred to the Buffalo Federal Detention Facility ("BFDF") in Batavia, New York, on August 29, 2018. Nzemba was served with a notice that his removal hearing would be held on September 20, 2018, at the BFDF.

His attorney submitted an appellate brief arguing that the IJ failed to give meaningful consideration to Nzemba's testimony regarding his family ties and fixed address in the United States and also failed to consider whether any amount of bond or other conditions of release would reasonably ensure his appearance at future immigration proceedings. The BIA dismissed the bond appeal on May 14, 2019.

Nzemba's removal hearing was scheduled for October 29, 2018. On that day, Nzemba appeared with counsel before the IJ. Nzemba testified that he feared persecution and torture in the DRC because of his political beliefs and membership in particular social groups. Nzemba claimed to have suffered physical harm by government officials in 2016 and 2017 due to his production of a film that the current dictatorial regime found unacceptable. The IJ reviewed Nzemba's testimony and prior statements and found them internally inconsistent, implausible, and uncorroborated. In particular, the IJ determined that there was absolutely no proof that Nzemba's film had actually been made, much less released. In a ten-page ruling, the IJ found that Nzemba had not carried his burden of proof of establishing entitlement to withholding of removal, cancellation of removal, and protection under Article III of the Convention Against Torture ("CAT"). Accordingly, the IJ ordered Nzemba removed to the DRC. Nzemba appealed the IJ's order of removal on November 27, 2018, to the BIA.

Briefs to the BIA relating to Nzemba's appeal of the order of removal were due on January 18, 2019; his newly substituted *pro bono* counsel requested and obtained an extension of time until February 8, 2019, to file an appellate brief. In his brief, Nzemba's counsel contested the IJ's adverse credibility determination, arguing, *inter alia*, that certain corroborating proof had been excluded from the record. Counsel also described the bureaucratic hurdles Nzemba faced in obtaining, and having translated, certain records from the DRC on the relatively short timeline imposed by the IJ.

On April 15, 2019, the BIA issued an order remanding the case for further proceedings. The BIA noted that on appeal, Nzemba's counsel had come forward with new evidence supporting the contention that Nzemba is a film-maker and that the debut of his film had resulted in his abduction and torture by the DRC police. Accordingly, the BIA held, remand to the IJ for reconsideration of Nzemba's persecution and torture claims was warranted. A hearing on remand has been scheduled for August 8, 2019, before the IJ in Nzemba's case.

On April 17, 2019, Nzemba filed his Petition (Docket No. 1) in this Court. The Government filed an Answer and Return (Docket No. 4) and a Memorandum of Law (Docket No. 5), as well as two supporting declarations, one from a deportation officer with attached exhibits (Docket Nos. 4-1 & 4-2), and one from a

representative of the BFDF (Docket No. 4-3). Nzemba did not file any reply papers. The matter was transferred to the undersigned on June 24, 2019.

## III.  Scope of Review

Title 28 U.S.C. § 2241 grants this Court jurisdiction to hear habeas corpus petitions from aliens claiming they are held "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001) (citing 28 U.S.C. § 2241(c)(3)). However, the REAL ID Act of 2005, Pub. L. No. 109-13, § 106(a), 199 Stat. 231 (May 11, 2005) amended the Immigration and Nationality Act ("INA") to provide that petitions for review filed in the appropriate Courts of Appeals were to be the "sole and exclusive means for judicial review" of final orders of removal. *Ruiz-Martinez v. Mukasey*, 516 F.3d 102, 113 (2d Cir. 2008) (citing REAL ID Act § 106(c); 8 U.S.C. § 1252(a)(5)). In other words, the REAL ID Act "strips district courts of jurisdiction to hear habeas petitions challenging final orders of deportation. . . ." *De Ping Wang v. Dep't of Homeland Sec.*, 484 F.3d 615, 615-16 (2d Cir. 2007). District courts still are empowered to grant relief under § 2241 to claims by aliens under a final order of removal who allege that their post-removal-period detention and supervision are unconstitutional. *See Zadvydas*, 533 U.S. at 687-88; *see also Hernandez v. Gonzales*, 424 F.3d 42, 42–43 (1st Cir. 2005) ("The Real ID Act deprives the

-6-

district courts of habeas jurisdiction to review orders of removal, . . . [but] those provisions were not intended to 'preclude habeas review over challenges to detention that are independent of challenges to removal orders.'") (quoting H.R. Cong. Rep. No. 109-72, at *43 2873 (May 3, 2005)).

Although this Court has jurisdiction to decide statutory and constitutional challenges to civil immigration detention, it does not have jurisdiction to review the discretionary decisions of the Attorney General. *Zadvydas*, 533 U.S. at 688 (citing 8 U.S.C. § 1252(a)(2)(B)(ii)) ("[N]o court shall have jurisdiction to review . . . any other decision or action of the Attorney General . . . the authority of which is specified under this subchapter to be in the discretion of the Attorney General."). "[W]hether the district court has jurisdiction will turn on the substance of the relief that a [petitioner] is seeking." *Delgado v. Quarantillo*, 643 F.3d 52, 55 (2d Cir. 2011) (*per curiam*).

## IV. Discussion

### A.   Overview of Petitioner's Claims

Nzemba's Petitioner enumerates three claims for relief. In his First Claim for Relief, Nzemba asserts that his bond hearing violated INA § 236(a), 8 U.S.C. § 1226(a), because the IJ placed the burden on him to establish that he is not a danger to society or a flight risk. *See* Petition ("Pet.") (Docket No. 1) ¶¶ 34, 40-41. The Second Claim for Relief asserts that Nzemba's prolonged

detention violates the Due Process Clause of the Fifth Amendment and *Zadvydas v. Davis*, (2001). *Id.* ¶¶ 42-44. The Petition's Third Claim for Relief, described as a "Procedural Due Process Violation," asserts that requiring the alien to carry the burden of proof at a bond hearing is an invalid agency interpretation and in violation of Administrative Procedures Act ("APA"), 5 U.S.C. § 706(2).[2] Consistent with the Second Circuit's policy "the submissions of a *pro se* litigant must be construed liberally and interpreted 'to raise the strongest arguments that they suggest[,]'" *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006 (quotations and citations omitted; emphasis in *Triestman*), the Court finds that Nzemba asserts another due process claim elsewhere in his Petition. Specifically, Nzemba asserts that requiring the alien to bear the burden of proof at a § 1226(a) bond violates due process. Pet. ¶ 39 (citing *Hernandez v. Decker*, No. 18-CV-5026 (ALC), 2018 WL 3579108, at *11 (S.D.N.Y. July 25, 2018), *appeal withdrawn*, No. 18-2824, 2019 WL 1377025 (2d Cir. Feb. 5, 2019); *Martinez v. Decker*, No. 18-CV-6527 (JMF), 2018 WL 5023946, at *1 (S.D.N.Y. Oct. 17, 2018), *appeal withdrawn sub nom. Linares Martinez v. Decker*, No. 18-3752, 2019 WL 2524182 (2d Cir.

---

[2] "Under 5 U.S.C. § 706(2)(A) a reviewing court must hold unlawful and set aside any agency action found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Karpova v. Snow*, 497 F.3d 262, 267 (2d Cir. 2007).

May 9, 2019)). Nzemba also requests that the Government be enjoined from transferring him to a different district pending completion of his removal proceedings.

For the reasons discussed below, the Court finds that as a matter of due process, Nzemba is entitled to a new bond hearing at which the Government bears the burden of proof by clear and convincing evidence. In light of this conclusion, the Court need not consider his statutory claim, his claim under the APA, or his *Zadvydas* claim. Finally, the Court denies his request for injunctive relief preventing his transfer of facilities as it is without authority to do so.

### B.   Statutory Framework

Title 8 U.S.C., § 1226(a), the statute authorizing Nzemba's detention, provides in pertinent part that "an alien *may be* arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). "[P]ending such decision, the Attorney General--(1) may continue to detain the arrested alien; and (2) may release the alien on- (A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or (B) conditional parole. . . ." *Id.* "In connection with § 1226(a), [DHS] promulgated regulations setting out the process by which a non-criminal alien may obtain release[,]. . . which "provide that, in order to obtain bond or conditional parole, the 'alien must demonstrate to the

satisfaction of the [decision maker] that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding.'" *Sopo v. U.S. Attorney Gen.*, 825 F.3d 1199, 1208 (11th Cir. 2016) (quoting 8 C.F.R. § 1236.1(c)(8); second alteration in original), *vacated on other grounds*, 890 F.3d 952 (11th Cir. 2018). The DHS district director makes the initial custody determination; thereafter, the alien has the right to appeal an adverse decision to an IJ, and then to the BIA. 8 C.F.R. §§ 1236.1(d)(1), (3); 1003.19(a), (f). If denied release from custody, a § 1226(a) detainee may seek a custody redetermination hearing upon a showing of changed circumstances. 8 C.F.R. § 1003.19(e).

While § 1226(a) is silent on the issues of which party bears the burden of proof at a custody redetermination hearing and the quantum of evidence necessary to satisfy that burden, *see* 8 U.S.C. § 1226(a), the BIA has interpreted § 1226(a) to place "[t]he burden . . . on the alien to show to the satisfaction of the [IJ] that he or she merits release on bond." *In re Guerra*, 24 I. & N. Dec. 37 (BIA 2006); *accord In re Adeniji*, 22 I. & N. Dec. 1102, 1116 (BIA 1999) (holding that "respondent must demonstrate that his release would not pose a danger to property or persons, and that he is likely to appear for any future proceedings"). The alien must show that he is not "a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail

risk." *Guerra*, 24 I. & N. Dec. at 40. In cases issued following *Adeniji*, the BIA has reaffirmed that the alien properly bears the burden of proof; the quantum of proof is described simply as being "to the satisfaction of" the IJ and BIA. *E.g.*, *In re Fatahi*, 26 I. & N. Dec. 791, 793 (BIA 2016) ("An alien who seeks a change in custody status must establish to the satisfaction of the [IJ] and the [BIA] that he is not 'a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk.'") (quoting *Guerra*, 24 I. & N. Dec. at 40).

The BIA is the only forum from which an alien may seek reconsideration of the substance of an IJ's discretionary bond determination. *See* 8 C.F.R. §§ 1003.19(f), 1003.38, 1236.1(d)(3); *see also Demore v. Kim*, 538 U.S. 510, 516–17 (2003) (noting that 8 U.S.C. § 1226(e) bars federal court review of a "discretionary judgment" or a "decision" of the Attorney General) (citing 8 U.S.C. § 1226(e) (stating that "[n]o court may set aside any action or decision by [immigration officials] under this section regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole")). "What § 1226(e) does not bar, however, are constitutional challenges to the immigration bail system." *Pensamiento v. McDonald*, 315 F. Supp.3d 684, 688–89 (D. Mass. 2018) (citing *Jennings v. Rodriguez*, ___ U.S. ____, 138 S. Ct. 830, 841, 200 L.Ed.2d 122 (2018) (holding that challenges to "the extent of the Government's detention authority" are not precluded by

§ 1226(e)); *Demore*, 538 U.S. at 517 ("Section 1226(e) contains no explicit provision barring habeas review, and we think that its clear text does not bar respondent's constitutional challenge to the legislation authorizing his detention without bail [under § 1226(c)]. . . ."); other citations omitted), *appeal withdrawn sub nom. Pensamiento v. Moniz*, 18-1691 (1st Cir. Dec. 26, 2018).

Here, Nzemba is not challenging the IJ's discretionary decision to keep him in detention. Instead, he is arguing that the immigration bond system, in which aliens detained pursuant to § 1226(a) must bear the burden of proving they are not dangerous and are not flight risks, violates the Due Process Clause of the Fifth Amendment. "This type of constitutional claim 'falls outside of the scope of § 1226(e)' because it is not a matter of the IJ's discretionary judgment." *Pensamiento*, 315 F. Supp.3d at 689 (quoting *Jennings v. Rodriguez*, ___ U.S. ____, 130 S. Ct. 830, 841 (2018)).

## C.   Constitutional Framework

The Due Process Clause of the Fifth Amendment forbids the Government from "depriv[ing]" any "person . . . of . . . liberty . . . without due process of law." U.S. CONST., amend. V. The Supreme Court has emphasized that "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Longstanding Supreme

Court precedent has underscored the principle that "civil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection." *Addington v. Texas*, 441 U.S. 418, 425 (1979). That an individual may not be a United States citizen or may not be in this country legally does not divest them of all protections enshrined in the Due Process Clause. *See Zadvydas*, 533 U.S. at 693 ("[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."); *Reno v. Flores*, 507 U.S. 292, 306 (1993) ("It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings."). The question that has continued to vex court is the nature of the process due, for the Supreme Court "has recognized detention during deportation proceedings as a constitutionally valid aspect of the deportation process." *Demore*, 538 U.S. at 523 (citations omitted).

In the context of a § 1226(a) custody hearing, the Ninth Circuit has held that the Constitution mandates placing the burden of proof on the Government to show ineligibility for bail by clear and convincing evidence. *Singh v. Holder*, 638 F.3d 1196, 1203 (9th Cir. 2011). The Ninth Circuit explained that "even where prolonged detention is permissible, due process requires 'adequate procedural protections' to ensure that the government's asserted justification for physical confinement 'outweighs the individual's

-13-

constitutionally protected interest in avoiding physical restraint.'" *Id.* (quotations omitted). Several district courts have held that *Singh*'s due process analysis survived *Jennings* since the Supreme Court expressly declined to address the constitutional question.[3] *E.g., Cortez v. Sessions,* 318 F. Supp. 3d 1134, 1146–47 (N.D. Cal. 2018) ("The [*Jennings*] Court did not engage in any discussion of the specific evidentiary standard applicable to bond hearings, and there is no indication that the Court was reversing the Ninth Circuit as to that particular issue. Accordingly, the court declines to find that *Jennings* reversed the clear and convincing evidence standard announced in *Singh* or later Ninth Circuit cases relying on *Singh*'s reasoning."), *appeal dismissed*, No. 18-15976, 2018 WL 4173027 (9th Cir. July 25, 2018).[4]

---

[3]

    In *Jennings*, the class of habeas petitioners had originally argued that, absent a requirement for periodic bond hearings, 8 U.S.C. §§ 1225(b), 1226(a), and 1226(c) would violate the Due Process Clause. *See Jennings*, 138 S. Ct. at 839. Instead of addressing the constitutional argument, however, the Ninth Circuit employed the canon of constitutional avoidance and interpreted § 1226(a) to require "periodic bond hearings every six months in which the Attorney General must prove by clear and convincing evidence that the alien's continued detention is necessary." 138 S. Ct. at 847. But the Supreme Court held that "[n]othing in § 1226(a)'s text . . . even remotely supports the imposition of either of those requirements." *Id.* The Supreme Court reversed and remanded to the Ninth Circuit with instructions to consider the constitutional questions on the merits. *Id.* at 851. The Ninth Circuit, in turn, remanded the case to the district court without reaching the merits of the constitutional arguments. *Rodriguez v. Marin*, 909 F.3d 252 (9th Cir. 2018), remanding to *Rodriguez v. Robbins*, Case No. 07-cv-3239-TJH-RNB (C.D. Cal.).

[4]

    *See also D. v. Sec'y of Homeland Sec.*, No. 0:18-CV-1557-WMW-KMM, 2019 WL 1905848, at *6 (D. Minn. Feb. 11, 2019) ("'[B]ecause the Jennings majority and dissent were focused on whether the statutes required bond hearings, declining to reach the constitutional question at issue here, the Court is unpersuaded that Jennings has any bearing on the appropriate procedures consistent with due process.'") (quoting *Hernandez v. Decker*, No. 18 Civ. 5026 (ALC), 2018 WL

-14-

In *Lora v. Shanahan*, 804 F.3d 601, 616 (2d Cir. 2015), *vacated*, 138 S. Ct. 1260 (2018), the Second Circuit relied on *Singh*'s constitutional avoidance analysis to hold, in the context of an criminal alien detained under § 1226(c), that due process requires a bail hearing within six months of the alien being taken into custody at which the Government must establish by clear and convincing evidence that the alien poses a risk of flight or a danger to the community. After *Lora* was decided, the Supreme Court granted *certiorari* in *Rodriguez v. Jennings*, 804 F.3d 1060 (9th Cir. 2015), and rejected the Ninth Circuit's constitutional avoidance analysis on which the Second Circuit had relied in interpreting § 1226(c). Accordingly, the Supreme Court vacated *Lora* and remanded it for further consideration in light of *Jennings v. Rodriguez*, 138 S. Ct. 830, *supra.*

On remand in *Lora*, the Second Circuit dismissed the appeal as moot because, in the interim, the petitioner had been released on bond. *Lora v. Shanahan*, 719 F. App'x 79 (2d Cir. 2018). Thus, the Second Circuit did not have occasion to revisit the constitutional question in *Lora*. Some district courts in this Circuit have held that while *Lora* is no longer precedential authority, it still carries "significant persuasive weight," *Sajous v. Decker*, 2018 WL 2357266, at *6 (citing *Brown v. Kelly*, 609 F.3d 467, 476-77

3579108, at *11 (S.D.N.Y. July 25, 2018)), *report and recommendation adopted as modified sub nom. Bolus A. D. v. Sec'y of Homeland Sec.*, 376 F. Supp.3d 959 (D. Minn. 2019).

(2d Cir. 2010)), on the questions of the proper burden and quantum of proof at immigration bond hearings.

A number of district courts have taken up the question left open by the Supreme Court in *Jennings*, and "there has emerged a consensus view that where, as here, the government seeks to detain an alien pending removal proceedings, it bears the burden of proving that such detention is justified." *Darko*, 342 F. Supp.3d at 434-36 (citing *Linares Martinez v. Decker*, No. 18 Civ. 6527 (JMF), 2018 WL 5023946, at *32 (S.D.N.Y. Oct. 17, 2018); *Sajous v. Decker*, No. 18 Civ. 2447 (AJN), 2018 WL 2357266, at *12 (S.D.N.Y. May 23, 2018); *Hernandez*, 2018 WL 3579108, at *10; *Frederic v. Edwards*, No. 18 Civ. 5540(AT), Docket No. 13 (S.D.N.Y. July 19, 2018); *Pensamiento,* 315 F. Supp.3d at 692; *Figueroa v. McDonald*, No. 18-CV-10097 (PBS), ___ F. Supp.3d ____, 2018 WL 2209217, at *5 (D. Mass. May 14, 2018); *Frantz C. v. Shanahan*, No. CV 18-2043 (JLL), 2018 WL 3302998, at *3 (D. N.J. July 5, 2018); *Portillo v. Hott*, 322 F. Supp.3d 698, 709 n.9 (E.D. Va. 2018); *Cortez*, 318 F. Supp.3d at 1145-46; *see also D. v. Sec'y of Homeland Sec.*, 2019 WL 1905848, at *6; *Diaz-Ceja*, 2019 WL 2774211, at *10.

In concluding that allocating the burden to a noncriminal alien to prove that he should be released on bond under § 1226(a) violates due process, a number of these courts have looked for guidance to the Supreme Court's precedent on civil commitment and detention. *E.g.*, *Darko*, 342 F. Supp.3d at 434 (citing *Addington v.*

*Texas*, 441 U.S. 418, 425 (1979) ("In considering what standard should govern in a civil commitment proceeding, we must assess both the extent of the individual's interest in not being involuntarily confined indefinitely and the state's interest in committing the emotionally disturbed under a particular standard of proof. Moreover, we must be mindful that the function of legal process is to minimize the risk of erroneous decisions."); other citations omitted). The Government clearly has legitimate interests in both public safety and securing a noncitizen's appearance at future immigration proceedings. However, the Court cannot discern any legitimate Government interest, beyond administrative convenience, in detaining noncitizens generally while their immigration proceedings are pending and no final removal order has been issued. *See Addington*, 441 U.S. at 426 ("[T]he State has no interest in confining individuals involuntarily if they are not mentally ill or if they do not pose some danger to themselves or others. Since the preponderance standard creates the risk of increasing the number of individuals erroneously committed, it is at least unclear to what extent, if any, the state's interests are furthered by using a preponderance standard in such commitment proceedings."). The Court agrees with the district court cases holding that allocating the burden to a noncriminal alien to prove he should be released on bond under § 1226(a) violates due process because it asks "[t]he individual . . . to share equally with society the risk of error

-17-

when the possible injury to the individual is significantly greater than any possible harm to the [Government]." 441 U.S. at 427. *See Darko*, 342 F. Supp.3d at 435 ("[G]iven the important constitutional interests at stake, and the risk of harm in the event of error, it is appropriate to require the government to bear the burden, particularly in light of long-established Supreme Court precedent affecting the deprivation of individual liberty[.]") (citing *Linares Martinez*, 2018 WL 5023946 at *2); *Diaz-Ceja*, 2019 WL 2774211, at *10 (similar) (citing *Addington*, 441 U.S. at 427; *Singh*, 638 F.3d at 1203; other citations omitted).

As to the applicable burden of proof, most courts that have decided the issue have concluded that Government must supply clear and convincing evidence that the alien is a flight risk or danger to society. *See Darko*, 342 F. Supp.3d at 436 (stating that "the overwhelming majority of courts to have decided the issue" utilized the "clear and convincing" standard) (collecting cases); *but see Diaz-Ceja*, 2019 WL 2774211, at *11 (finding that the appropriate standards are ones that mirror the Bail Reform Act, i.e., the government must prove risk of flight by a preponderance of the evidence, and it must prove dangerousness to any other person or to the community by clear and convincing evidence) (internal and other citations omitted). As noted above, *Singh* and *Lora* required the Government to meet its burden by clear and convincing evidence, a conclusion followed by the vast majority of the district courts—and

all the district courts in this Circuit—that have decided this issue.

The Court joins with these courts and concludes that the Fifth Amendment's Due Process Clause requires the Government to bear the burden of proving, by clear and convincing evidence, that detention is justified at a bond hearing under § 1226(a). *Darko*, 342 F. Supp.3d at 436 (citations omitted).

Having found a constitutional error, the Court next examines whether such error was prejudicial to Nzemba. *Brevil v. Jones*, No. 17 CV 1529-LTS-GWG, 2018 WL 5993731, at *5 (S.D.N.Y. Nov. 14, 2018) (citing *Singh*, 638 F.3d at 1205 (analyzing whether IJ's application of an erroneous evidentiary burden at bond hearing under § 1226(a) prejudiced alien detainee); *Garcia-Villeda v. Mukasey*, 531 F.3d 141, 149 (2d Cir. 2008) ("Parties claiming denial of due process in immigration cases must, in order to prevail, allege some cognizable prejudice fairly attributable to the challenged process.") (internal quotations omitted)); *Linares Martinez*, 2018 WL 5023946, at *5 (rejecting government's argument that alien detained under § 1226(a) was not prejudiced by any due process violation at first bond hearing; "the IJ plainly could have found that the single set of charges—now reduced to misdemeanors—was not enough to show, by clear-and-convincing evidence, that Linares's release would pose a danger"); *but see Darko*, 342 F. Supp.3d at 436 (finding due process error due to IJ's imposition of burden of proof on alien detained

-19-

under § 1226(a); granting habeas relief and ordering second individualized bond hearing without undertaking analysis of whether alien was prejudiced by erroneous burden of proof at first bond hearing).

As an initial matter, the BIA directs IJs to consider the following factors in determining whether an immigrant is a flight risk or poses a danger to the community: (1) whether the immigrant has a fixed address in the United States; (2) the immigrant's length of residence in the United States; (3) the immigrant's family ties in the United States, (4) the immigrant's employment history, (5) the immigrant's record of appearance in court, (6) the immigrant's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses, (7) the immigrant's history of immigration violations; (8) any attempts by the immigrant to flee prosecution or otherwise escape from authorities; and (9) the immigrant's manner of entry to the United States. *Matter of Guerra*, 20 I & N Dec. at 40. Here, the IJ relied on Nzemba's lack of property ownership and indigence (the IJ noted that he had only one bank account with "virtually a zero balance"), which do not appear to be factors recognized by the BIA's decision in *Guerra*. The IJ also noted that while Nzemba claimed to have family in the United States, he had no proof of these relatives' existence or an address where he would be staying. In its remand order, the BIA recognized

that Nzemba had come forward with new evidence, including a letter from his cousin, a legal permanent resident of the United States, stating that Nzemba could live with him in Georgia and that he would help Nzemba attend future court appearances. Docket No. 1, p. 140 of 171. The BIA noted that Nzemba had explained the difficulties he had in obtaining this evidence in time to place it before the IJ for consideration, given the relatively short deadline set by the IJ. Given the significance the IJ placed on the lack of evidence regarding Nzemba's fixed address and family ties in the United States, the Court "cannot conclude that the clear and convincing evidence standard would not have affected the outcome of the bond hearing," *Singh*, 638 F.3d at 1205, particularly in conjunction with the evidence from Nzemba's cousin, received less than a month after the bond hearing. The Court further observes that Nzemba is entitled, under 8 C.F.R. § 1003.19(e), to seek a custody redetermination hearing upon a showing of changed circumstances. The Court has no difficulty finding that this new evidence constitutes changed circumstances warranting a redetermination of Nzemba's custody status under 8 C.F.R. § 1003.19(e).

Habeas relief accordingly is warranted to the extent that Nzemba must be afforded a new bond hearing before an IJ at which the Government must adduce clear and convincing evidence that he is

a flight risk (there is no suggestion in the record that Nzemba was or is a danger to the community).

## V. Conclusion

For the foregoing reasons, the Petition for a writ of habeas corpus is granted to the extent that, within ten days of the date of entry of this Decision and Order, the Government shall bring Nzemba before an IJ for an individualized bond hearing. At that hearing, the Government shall bear the burden of proving, by clear and convincing evidence, that he is a flight risk. If the Government fails to provide Nzemba with such a bond hearing within ten days, the Government shall immediately release him. If the Government holds the required bond hearing but fails to prove, by clear and convincing evidence, that Nzemba is a flight risk, the Government must release him on bail with appropriate conditions. The Government is further ordered to provide a status report to this Court within five days following the completion of the bond hearing. The Clerk of Court is directed to close this case.

**SO ORDERED.**

S/Michael A. Telesca

_____
HONORABLE MICHAEL A. TELESCA
United States District Judge

Dated:    July 17, 2019
          Rochester, New York.